**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PFG Ventures, L.P.,** | ) | **CASE NO. 20 CV 2295** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Foundry Commerce, LLC, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Elijah Sackett's Motion to Dismiss Plaintiff's Complaint (Doc. 8) and Defendant Foundry Commerce, LLC's Partial Motion to Dismiss Plaintiff's Complaint (9). This is a breach of contract case. For the reasons that follow, Defendant Elijah Sackett's Motion to Dismiss Plaintiff's Complaint is GRANTED and defendant Sackett is DISMISSED from this case. Defendant Foundry Commerce, LLC's Partial Motion to Dismiss Plaintiff's Complaint is GRANTED in PART and DENIED in PART. The motion is GRANTED as to count four (tortious interference) and DENIED as to count five (promissory

1

estoppel).

**FACTS**

For purposes of ruling on the pending motions, the facts set forth in the complaint are presumed true.

Plaintiff PFG Ventures, L.P. ("PFG") brings this action against defendants Elijah Sackett ("Sackett") and Foundry Commerce LLC ("Foundry") alleging wrongdoing in connection with the parties' business relationship.  PFG is in the business of "offering franchises for the operation of businesses specializing in the sale and distribution" of a variety of business products.  (Compl. par. 14).  PFG and its franchisees obtain and maintain online e-commerce stores.   Critical to the success of PFG is the ability to support e-commerce solutions through a proprietary business management system.  The system includes a complex online platform providing unique options to franchisees.

Foundry and Sackett, who is Foundry's president, develop software and provide e-commerce hosting as well as migration and other services.  In early 2016, PFG, Foundry, and Sackett collaborated to make a platform that would both "become a part of and support PFG's proprietary management system and service PFG's franchisees."  After extensive negotiations, it was determined that Foundry's existing platform would be augmented, and hosted services and solutions would be further developed.   At the end of the process, PFG franchisees would be migrated to the new platform.  These efforts took a substantial investment of time and resources by the parties.

Ultimately, PFG determined that Foundry could not migrate all of the e-stores.  In response, PFG provided Foundry with the assistance of 30 PFG employees and paid the salaries

of two Foundry software developers to be assigned to the project.

On March 21, 2016, PFG[1] and Foundry entered into an Ecommerce Platform Conversion and Hosted Services Agreement ("Agreement").  According to PFG, the Agreement required Foundry to fully convert and migrate existing and new franchisees to an e-commerce store platform owned by Foundry.  In addition, Foundry was to provide hosting and related services for the e-commerce stores created for PFG's franchisees.   PFG alleges that the service and platform were not yet in existence.

In addition, PFG alleges that the Agreement provides as follows:

- PFG possess an irrevocable license to use Foundry's technology;

- Foundry must maintain its hosted solutions at one or more data centers;

- Foundry must maintain an escrow containing its source code;

- In the event of a breach, PFG can access the Warm Data Center, as well as the source code;

- In the event of a breach, PFG possesses an irrevocable license to provide hosted services;

- Foundry is prohibited from "commercializing" the hosted solutions "through any person or entity in the promotional products industry who is recognized...as a member of the then-current Advertising Speciality Institution Top 40 Distributor list;"

- Foundry cannot solicit these prohibited entities through a third party entity; and

- Foundry cannot reassign personnel working on PFG's project without prior approval.

---

[1] PFG is an assignee of the Agreement.  As an assignee, PFG stands in the shoes of the original party to the Agreement.  Accordingly, for the sake of clarity, the Court indicates throughout the Opinion that the parties to the Agreement are PFG and Foundry.

Initially, the parties were able to transition PFG's franchisees to the new platform. According to the complaint, Foundry and Sackett decided the Agreement was not sufficiently profitable and stopped responding to requests, thereby impacting the functionality of the platform. Because PFG's employees were not familiar with the underlying source code, PFG could not assist its franchisees in making any requested changes. Plaintiff also alleges that Foundry and Sackett redirected employees designated to work on the PFG project without obtaining the prior consent of PFG. This is so even though PFG continues to be billed for these costs. In late fall of 2019, the parties discussed the situation and Foundry agreed to once again service PFG franchisees. Following the meeting, however, Foundry repeated its previous behavior.

At some point, Foundry hired Melinda Durkee ("Durkee"), a former "disgruntled" PFG franchisee. PFG expressed concern over the arrangement, but Foundry failed to reassign Durkee or take reasonable steps to protect confidential information belonging to PFG. According to the complaint, Durkee left Foundry and set up her own business in order to act as third-party agents of Foundry. This relationship allowed Foundry and Sackett to sell Foundry's platform to competitors of PFG, including to the Sandbox Group. The Sandbox Group is an affiliate of Adventures in Advertising, which is a "top 40 Distributor." PFG alleges that this affiliate represented that it would have become a PFG franchisee if it had been unable to get the platform directly from Foundry. PFG alleges that Foundry approached other affiliates of "top 40 Distributors."

At no point did Foundry keep a Warm Data Center. Nor did Foundry place its source code in escrow. If Foundry refuses to service PFG's client, and if PFG cannot access the Warm

4

Data Center or the source code, then PFG will have no way to continue its business.  In addition, PFG alleges that it was forced to explain to its franchisees that the platform would not have the necessary functionality, and that the necessary support would not be provided.  Some franchisees opted to work with alternate e-commerce providers.

Thereafter, PFG filled this lawsuit containing five claims for relief.  Count one is a claim against Foundry for breach of contract.  Count two seeks specific performance as to Foundry.  Count three seeks injunctive relief against both defendants.  Count four is a claim for tortious interference with prospective economic advantage and count five is a claim for promissory estoppel.  These two counts are asserted against both defendants.

Sackett moves to dismiss all counts filed against him.  Foundry moves to dismiss counts four and five.  PFG opposes both motions.

**STANDARD OF REVIEW**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the

5

> statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

## **ANALYSIS**

### A. Tortious interference (count four)

Defendants argue that plaintiff fails to state a claim for tortious interference because the allegations of "interference" are directed at the failure to perform the Agreement. According to defendants, a tortious interference claim cannot be based on a breach of contract. Defendants further claim that the complaint fails to identify any particular customer upon which this claim is based. Sackett argues that the claim fails as to him because the allegations do not distinguish between Sackett and Foundry. Rather, all allegations are directed at "Foundry and Sackett." Sackett also argues that there are no allegations against him in his personal, as opposed to corporate, capacity.

In response, plaintiff argues that it need not identify any particular customer. According to plaintiff, the complaint contains allegations directed at each element of the cause of action.

Plaintiff also claims that the existence of a contract does not defeat a claim for tortious interference because plaintiff alleges a motive to interfere with its business relations beyond that resulting from a breach of the Agreement.  Plaintiff further claims that Foundry and Sackett are effectively "indistinguishable," and that Sackett actively participated in the alleged tortious conduct.

Under Ohio law, interference with business relationships or contracts generally occurs when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another or not to perform a contract with another. *Wauseon Plaza Ltd. Psp. v. Wauseon Hardware Co.*, 807 N.E.2d 953, 962–63 (2004); *A & B—Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (1995). The elements of a cause of action for interference with a prospective business opportunity under Ohio law are: (1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiff's prospective relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) the interference was without justification; and (5) the interference caused the plaintiff to suffer damages. *Chrvala v. Borden, Inc.*, 14 F.Supp.2d 1013, 1023 (S.D.Ohio 1998); *Dish Network, LLC v. Fun Dish, Inc.*, 2010 WL 5230860, at *5 (N.D.Ohio Dec.16, 2010).  But, where a contract governs the subject matter of the alleged tortious interference,

> It is well established that though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference.  An exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with business resulting as a mere consequence of such breach.

7

*Digital & Analog Design Corp. v. North Supply Co.*, 540 N.E.2d 1358, 1368 (Ohio 1989)(citations and quotations omitted).

Here, in the light of the Agreement and plaintiff's express allegations, the Court finds that the complaint fails to allege a claim for tortious interference. Plaintiff alleges as follows:

> 97. Foundry and Sackett intentionally, willfully, and without justification interfered with PFG's business relationships with its customers by failing to provide the service and solutions it agreed to provide to PFG and its franchisees. Because Foundry failed to provide the agreed-upon level of service and solutions, PFG was unable to fulfill its franchisee customers' expectations for service and support. In some cases, PFG was forced to cover for Foundry and provide the support and services that Foundry had agreed to provide. In other cases, PFG's franchisee customers were forced to do without the services and solutions.
>
> 98. Foundry and Sackett also knowingly used technology developed for and financed by PFG to lure and entice at least one potential PFG customer to use Foundry's services and not PFG's. Sackett led this effort. Not only were these actions in direct competition with PFG, in violation of the parties' agreements, but also Foundry and Sackett would not have been able to attract that business without PFG's technology.

In other words, plaintiff alleges that defendants interfered with its prospective business relationships by failing to provide the agreed upon services and improperly using technology to "lure and entice at least one potential PFG customer" to use Foundry's services. With regard to the alleged failure to provide services, the Court finds that plaintiff wholly fails to allege any improper motive on the part of defendants to interfere with plaintiff's prospective customers. Rather, the allegation provides only that plaintiff was unable to provide its customers with the level of service they required. The allegation that the defendants improperly used the technology to "lure and entice" at least one of PFG's customers fares no better. Plaintiff expressly alleges that the Agreement *allowed* defendants to sell the product to other customers, provided the customers were not direct competitors of plaintiff. *See*, Compl. Par. 31 ("While the Agreement allowed [defendant] Foundry to sell the product to others who did not compete with [plaintiff] in

8

the e-commerce business, it explicitly carved out sales by [defendant] Foundry to [plaintiff's] competitors."). By plaintiff's own allegations, defendant Foundry was permitted to sell the product to customers other than plaintiff's competitors. And, to the extent the unidentified "customer" referred to in the complaint is a competitor, there are insufficient allegations that plaintiff somehow had a prospective business relationship with this competitor. As such, the Court finds that dismissal of count four is warranted.

### B. Promissory estoppel (count five)

Defendants argue that plaintiff fails to state a claim for promissory estoppel because the two promises plaintiff asserts as the basis for the claim are covered by the Agreement. According to Sackett, there are no allegations directed at him in his personal capacity. Rather, the "promises" relate to Foundry's performance under the Agreement.

In response, plaintiff argues that it has identified two promises that are outside the scope of the Agreement. According to plaintiff, these promises were made by Sackett in both his corporate and personal capacities. Plaintiff further notes that it is permitted to plead in the alternative.

In order to state a claim for promissory estoppel, plaintiff must allege: "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Weiper v. W.A. Hill & Assocs.*, 661 N.E.2d 250, 260 (Oh. Ct. App. 1995). "A plaintiff cannot, however, use the oral agreement on which she supports her promissory estoppel claim to alter the terms of a written agreement. When the promises serving as the basis of the promissory estoppel claim do not contradict the written

9

agreement, the claim may survive." *Ortega v. Wells Fargo Bank, N.A.*, 2012 WL 275055 at * 10 (N.D. Ohio Jan. 31, 2012)(citations omitted).

Here, plaintiff alleges that Sackett made two promises in both his corporate and individual capacities. Plaintiff identifies the following two promises: "(1) Foundry needed additional funds and support to uphold its contractual obligations, including additional software developers to be dedicated to the PFG project; and (2) if PFG funded two software developers' salaries [ ] these individuals would be solely dedicated to PFG's project. According to defendants, neither of these promises can form the basis of a promissory estoppel claim because they are contradicted by the Agreement and amount to an effort to modify the terms of the Agreement.

Upon review, the Court finds that dismissal is not warranted. The first "promise" identified by plaintiff is not actionable for the simple reason that it is not a promise. Rather, plaintiff alleges simply that Sackett "represented" that he needed additional funds, including the dedication of additional software developers. (Compl. Par. 103). On the other hand, the Court agrees with plaintiff that the second promise, *i.e.*, that "if [plaintiff] funded two software developers' salaries that those individuals would be solely dedicated to [plaintiff's] project," constitutes a promise. At this stage in the litigation, the Court cannot say that this promise is contradicted by the Agreement. Defendants wholly fail to point to any provision in the Agreement directed at the allocation of personnel. Nor do defendants identify a provision that contradicts or encompasses this promise. In fact, defendants do not reference *any* provision of the Agreement. Defendants argue that the promise to allocate personnel would somehow amount to an improper attempt at amendment. Again, however, defendants do not develop this

10

argument in the context of the Agreement.  Based on the arguments raised by defendants, the Court finds that the promissory estoppel claim is sufficiently plead.

On the other hand, the Court agrees with defendant Sackett that the complaint does not sufficiently allege a promissory estoppel claim against him in his personal capacity.  Throughout the complaint, plaintiff expressly alleges that the Agreement is between itself and defendant Foundry.  Plaintiff also expressly alleges that Sackett is the president of Foundry.   The promise forming the basis of the claim is that Sackett promised that two software developers would be dedicated to plaintiff's project.  The project arises under the Agreement.  Nonetheless, plaintiff alleges that Sackett made this statement in "*both* his corporate and personal capacities."  But, the law in Ohio precludes a claim for promissory estoppel if the promises were made on behalf of a corporation.  *See, Dietz-Britton v. Smythe, Cramer, Co*. 743 N.E.2d 960, 971 (Ohio Ct. App. 20000)("The court did not err by granting summary judgment on the promissory estoppel claim because plaintiff cannot hold the president personally responsible for promises he made on behalf of Smythe, Cramer.").  Although *Dietz-Britton* was decided on summary judgment, dismissal is warranted in this case because there are no factual allegations supporting plaintiff's legal conclusion that Sackett made the promise in "both his corporate and personal" capacities.  Rather, the *facts* alleged by plaintiff support only the allegation that Sackett acted as an agent of defendant Foundry.  The Court rejects plaintiff's argument that Sackett had the "personal" power to ensure that two developers would be dedicated to PFG's project, which arose pursuant to the Agreement.  Even if this allegation were in the complaint, nowhere does plaintiff allege how Sackett would possess the personal–as opposed to corporate–power to direct the employment of developers working at Foundry.  Absent some factual allegation that Sackett somehow acted in a

personal capacity, dismissal is warranted.

### C. Injunctive relief (count three)

Defendant Sackett moves to dismiss count three, which seeks injunctive relief. Having dismissed the substantive claims against Sackett in his personal capacity, the Court finds that the "remedy" of an injunction is not available. The Court notes however, that it maintains the power to order the "officers" or "employees" of Foundry to refrain from taking certain actions with respect to the Agreement. This is so because the Court maintains the power to issue an injunction against Foundry itself.

### **CONCLUSION**

For the foregoing reasons, Defendant Elijah Sackett's Motion to Dismiss Plaintiff's Complaint is GRANTED and defendant Sackett is DISMISSED from this case. Defendant Foundry Commerce, LLC's Partial Motion to Dismiss Plaintiff's Complaint is GRANTED in PART and DENIED in PART. The motion is GRANTED as to count four (tortious interference) and DENIED as to count five (promissory estoppel).

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 3/4/21